IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 2000

## STATE OF TENNESSEE  v. WILLIAM BRET ROBINSON

**Direct Appeal from the Criminal Court for Anderson County**
**No. 96CR0462     James B. Scott, Jr., Judge**

---

**No. E1999-00950-CCA-R3-CD - Decided**
**August 28, 2000**

---

The state appeals the trial court's exoneration of a bond forfeiture taken against AA Bonding Company.  The trial court exonerated the bonding company of the entire bond amount of $8,000, even though the forfeiture was final and the full amount had been paid to the trial court clerk. Concluding that Tenn. Code Annotated section 40-11-204(a) authorizes the action of the trial court and that the record reflects no abuse of the trial court's discretion, even though the trial court granted the exoneration via an $8,000 credit against AA Bonding's future forfeitures in Anderson County, we affirm the trial court's order to grant exoneration; however, we reverse as to the amount of, and the manner of effectuating the refund.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the trial court is AFFIRMED in part, REVERSED in part, and is VACATED and the case REMANDED.**

WITT, J., delivered the opinion of the court, in which HAYES, J., and OGLE, J., joined.

Paul G. Summers, Attorney General & Reporter, R. Stephen Jobe, Assistant Attorney General, Nashville, Tennessee, James N. Ramsey, District Attorney General, Jan Hicks, Assistant District Attorney General, Clinton, Tennessee, for the Appellant, State of Tennessee.

Ronald H. Ridenour, Clinton, Tennessee, for the Appellee, William Bret Robinson.

**OPINION**

　　　The state appeals the determination of the Anderson County Criminal Court that AA Bonding Company, which wrote the defendant's $8,000 appearance bond, should receive relief from the forfeiture of the bond in the form of $8,000 "credit toward any [future] final forfeiture of any bond made in Anderson County, Tennessee, by AA Bonding Company."  The state maintains the trial court exceeded its statutory authority to exonerate a bondsman from a bond forfeiture, and AA Bonding Company maintains that the trial court properly exercised its discretion to regulate the activities of bondsmen.  After a review of the record, the applicable law, and the briefs of the parties,

we affirm the grant of a refund but reverse as to the amount and method of refund.

AA Bonding Company wrote the defendant's bond to guarantee his appearance in the trial court on a charge of theft. The defendant was to appear initially before the trial court on April 25, 1997. However, he failed to appear despite three extensions of his appearance date. The trial court declared a final forfeiture of the bond on March 3, 1999, and AA Bonding Company paid $8,000 to the trial court clerk. On August 3, 1999, AA Bonding apprehended the defendant and submitted him into the custody of the Anderson County Sheriff. At the same time, it petitioned the court for relief from the forfeiture. The state opposed the granting of relief and argued that the court had no power to grant relief from the forfeiture after the payment was made to the clerk. Ultimately, the trial court determined that it could not order a refund because the clerk had already paid the funds to the state; however, in lieu of a refund, the trial court ordered that AA Bonding will have $8,000 "credit toward any final forfeiture of any bond made in Anderson County, Tennessee, by AA Bonding" in the future. The state appealed the ruling of the trial court.

In maintaining that the trial court lacked authority to refund the bond or order a credit, the state relies upon Tennessee Code Annotated section 40-11-203, which provides:

> (a) After the liability of the bail bondsman or surety has become fixed by forfeiture, *and before payment*, the bail bondsman or surety may be exonerated from the liability by the surrender of the defendant and the payment of all costs; but may be exonerated from costs also if, in the opinion of the court, the bail bondsman or surety has been in no fault.
> (b) It is left to the sound discretion of the court whether the bail bondsman or surety shall be relieved from the liability of bail to any and to what extent.

Tenn. Code Ann. § 40-11-203 (1997) (emphasis added). On the other hand, the defendant relies upon the provisions of Code section 40-11-204(a):

> **Relief on forfeited recongizances. –**
> (a) Except as provided in subsection (b), the judges of the general sessions, circuit, criminal and supreme courts may receive, hear and determine the petition of any person who claims relief is merited *on any recognizances forfeited*, and so lessen or absolutely remit the same, less a clerk's commission of five percent (5%) of the original paid final forfeiture or one thousand dollars ($1,000), whichever is less, and do all and everything therein as they shall deem just and right, and consistent with the welfare of the state, as well as the person praying such relief. *This power shall extend to the relief of those against whom final judgment has been entered whether or not the judgment has been paid*, as well as to the relief of those against

whom proceedings are in progress. Cities, which have adopted home
rule, may elect to authorize their city court judges to lessen or remit
forfeitures in accordance with the provisions of this section if those
judges have jurisdiction to hear state misdemeanor cases.

Tenn. Code Ann.§ 40-11-204(a) (1997) (emphasis added). In addition, the defendant argues that the
trial court had the discretion to structure a credit against future bond forfeitures, regardless of the
application of Code section 40-11-204.

An examination of the two code sections reveals some conflict. Section 40-11-203
authorizes a trial court, "before payment" of the forfeiture, to grant relief from the liability of
forfeiture; however, section 40-11-204 authorizes the court, "on any recognizances forfeited," to
grant relief from the forfeiture "whether or not the judgment has been paid." The state maintains that
section 40-11-204 applies only to "recognizances," not to "bonds" which are assured by bondsmen.

We understand by the state's argument that the term "recognizance," as used in
section 40-11204, equates to the phrase "personal recognizance," as the phrase is used, for instance,
in Code section 40-11-115. Section 40-11-115 provides for the pretrial release of a "person charged
with a bailable offense" on his or her "personal recognizance or upon the execution of an unsecured
appearance bond in an amount specified by the statute." Tenn. Code Ann. § 40-11-115(a) (1997).
In other words, the state argues that section 40-11-204 applies only when the defendant was released
without security or upon an unsecured appearance bond, and section 40-11-203 applies to bonds
assured by a surety, such as a bondsman.

We must conclude, however, that this interpretation imports too much to the term
"recognizance." To be sure, the release of a defendant on his or her own, or "personal,"
recognizance is to decline to require security or a surety, but the term "recognizance" itself merely
refers, historically, to the fact that "the obligation of bail [is] entered of record," as opposed to a "bail
bond filed with the court, but not entered of record." State v. Gann, 164 Tenn. 601, 603, 51 S.W.2d
490 (1932). In Gann, the defendant's bond was assured by two sureties; yet, our supreme court
analyzed the exoneration-from-forfeiture procedure pursuant to Shannon's Code section 7146, now
Tennessee Code Annotated section 40-11-204. Id. at 602, 51 S.W.2d at 490. The court observed
that "[i]n the enforcement of forfeiture and for the exoneration of bail, the statute makes no
distinction between a recognizance and a bail bond." Id. at 603, 51 S.W.2d at 490. Both types of
bonds "are designed to compel the appearance of the prisoner, and both are [exclusively] enforceable
through the statutory remedy." Id. The statute empowers the supervising court "with a discretion
in the exoneration of bail." Id. Later cases, without commenting upon any distinction between
section 40-11-203 and 204, have applied section 40-11-204 in surety bond cases. See, e.g., State v.
Shredeh, 909 S.W.2d 833, 835 (Tenn. Crim. App. 1995); State v. Taylor, 675 S.W.2d 721, 723
(Tenn. Crim. App. 1984). We conclude that section 40-11-204's reference to "recognizance"
forfeiture does not render that section inapplicable to the present case.

Now, we must analyze the asserted conflict between the two statutes. When two

statutes appear in conflict, it is the duty of the court construing them to harmonize them so that, if possible, both may be given effect. Horton v. Carroll County, 968 S.W.2d 841, 844 (Tenn. Ct. App. 1997). We believe the statutes are in harmony when one considers that, in section 40-11-203, exoneration before payment entails no need to provide for a clerk's commission, and accordingly, section 40-11-203 makes no provision for a commission. However, section 40-11-204 provides that a clerk's commission shall be deducted from "the original *paid* final forfeiture." (Emphasis added.) Thus, after a forfeiture has been paid, the exoneration costs the bondsman the amount of the clerk's commission. Viewed in this light, the apparent disparity in the statutes is resolved.

Because the exoneration in the present case occurred after payment to the clerk, Code section 40-11-204(a) controls. The relief granted to AA Bonding, however, should have been limited to $7,600, the "original paid final forfeiture . . . less a clerk's commission of five percent (5%) . . . or one thousand dollars ($1,000), whichever is less," or $8,000 less $400.

Having established that an exoneration was authorized by statute and what the maximum amount of the exoneration should be, we must determine whether the trial court's ruling should be sustained. Determinations concerning the exoneration of bond forfeitures fall within the discretion of the trial court. Gann, 164 Tenn. at 603, 52 S.W.2d at 490. We, therefore, review the exoneration under an abuse-of-discretion standard.

Other than correcting the amount of the reimbursement, as we have done, we find no reason to disturb the trial court's grant of a reimbursement. However, the record reveals no basis to support the trial court's exercise of discretion to grant the reimbursement through a credit against future bond forfeitures. We agree with the state that the court's regulation of bonding activities is exclusively statutory, see Gann, 164 Tenn. 601, 603, 51 S.W.2d 490 (1932). The use of a future credit arrangement is not authorized by the statutes. See Tenn. Code Ann. §§ 9-4-301, -601 (1999).

Furthermore, the practice of granting credits *in futuro* frustrates important policy interests. The trial court's order, in the present case, fails to distinguish between misdemeanor bond forfeitures and felony bond forfeitures. The order provides that $8,000 "shall be credited toward one or more final forfeited bonds until such time as $8,000 has been used." Felony bond forfeitures are remitted to the state, while misdemeanor forfeitures are retained by the individual counties. Thus, because the bond forfeited in this case arose from a felony prosecution, Anderson County stands to lose monies from misdemeanor bond forfeitures. Also, this practice contradicts public policy in that it discourages diligence in furtherance of the bondsman's obligation to the court. In the present case, there will be little incentive for the bondsman to secure the presence of an elusive defendant before the court, at least until his credit has been exhausted.

For these reasons, we vacate the trial court's order and direct that court to enter an order which grants to AA Bonding a refund of $7,600, and the order shall serve to inform the accounts division of the state Office of Finance and Administration (1) why the refund was required and ordered, (2) the source of the money paid into the state treasury, (3) when, from whom, and in what amount the money was paid to the state, (4) the trial court docket number of the case in which

the money was paid, and (5) to whom and to what address the refund should go.

Accordingly, the trial court's order is affirmed in part and reversed in part, but the order is vacated, and the trial court is instructed to enter a new order in accordance with this opinion.

_____

James Curwood Witt, Jr., Judge